IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D'ANDRE DAVIS,<br><br>     Petitioner,<br><br>   vs.<br><br>CLARK E. DUCART, Warden, Pelican<br>Bay State Prison,[1]<br><br>     Respondent. | No. 2:13-cv-02570-JKS<br><br>MEMORANDUM DECISION |

   D'Andre Davis, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Davis is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Pelican Bay State Prison. Respondent has answered, and Davis has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

   In resolving his claims on direct appeal, the Court of Appeal recounted the facts of this case as follows:

>    Around 11:20 p.m. on August 23, 2008, Pedro Munoz was driving home with his father, Joseph, and his brother, Michael. Joseph was driving Michael's gold Chevy sedan, Michael was seated in the front passenger seat, and Pedro was sitting behind Michael. The Chevy's windows were rolled down; they stopped at a red light and a green Jeep Commander stopped in the lane next to them. Pedro and Michael looked over and saw [Davis] seated behind the driver. The driver, Robbyn Archer, was laughing and pointing at the Chevy. [Davis's] window also was rolled down; he stared at the Munozes. Pedro asked [Davis], "What's up?" Before [Davis] could answer, the light turned green and both vehicles drove away. Archer pulled the Jeep alongside the Chevy; [Davis] pointed a handgun at the Chevy and fired a single shot, striking Pedro on the side

---

   [1]  Clark E. Ducart is substituted for G. D. Lewis as Warden, Pelican Bay State Prison. FED. R. CIV. P. 25(d).

of his face. Archer attempted to flee but Joseph "rammed" the rear end of the Jeep in an effort to stop her. Joseph then took Pedro to the hospital, where Pedro underwent surgery for the gunshot wound to his face.

Stockton Police Sergeant Richard Ridenour was on duty driving a marked patrol vehicle when he saw the smoke created by the impact between the Jeep and the Chevy. He made a U-turn, saw the Chevy pull to the side of the road, and saw the Jeep speed away from the scene. Ridenour notified fellow officers of the chase as he pursued the Jeep. When the Jeep stopped, Ridenour saw two black men exit from the backseat. One of the men wore a white T-shirt and jeans, while the other wore a red T-shirt with a black jacket. The man in the red T-shirt, later identified as [Davis], jumped a fence and ran away. Ridenour tried to follow [Davis] but lost sight of him.

Officer Robert Wong responded to Ridenour's call. Taking a position on the perimeter of the scene, Officer Wong saw a black man wearing a white T-shirt and jeans, who he later identified as Omarea McPherson, walking towards him. Wong took McPherson into custody and found a live round for a 12-gauge shotgun in McPherson's front pocket and a pair of rubber gloves in McPherson's rear pants pocket. As he was putting McPherson into the back of his patrol car, Wong saw [Davis] running at a full sprint through a field toward a shopping center; Wong notified Ridenour. Ridenour went to the shopping center parking lot, where he found [Davis]. Ridenour told [Davis] to stop but [Davis] took off running between the parked cars. [Davis] appeared to be getting tired, so Ridenour got out of his vehicle and drew his Taser. Ridenour ordered [Davis] to stop; [Davis] obeyed, Ridenour detained him, and patted him down. Ridenour did not find any weapons, ammunition, or gloves on [Davis].

Ridenour gave [Davis] his *Miranda*[2] rights, then asked [Davis] where he was going and what he was doing. [Davis] said he was just walking home from a friend's house and did not know anything about a green Jeep. Ridenour saw that [Davis] was carrying a black, hooded sweatshirt that had leaves on it. Law enforcement later found a loaded handgun in a pile of bushes and leaves near the area where [Davis] jumped out of the Jeep.

[Davis] was subsequently charged with premeditated attempted murder ([California Penal Code] §§ 664/187, subd. (a)), shooting at an occupied motor vehicle (§ 246), discharging a firearm from a vehicle (§ 12034, subd. (d)), and being a felon in possession of a firearm (§ 12021, subd. (a)(1)). It was further alleged that [Davis] personally inflicted great bodily injury on his victim (§ 12022.7) and intentionally and personally discharged a firearm (§ 12022.53, subd. (d)). [Davis] pleaded not guilty to the charges and denied the enhancement allegations.

The first jury trial ended in a mistrial when the jury could not reach a verdict on any count. The second jury found [Davis] guilty of shooting at an occupied motor vehicle, discharging a firearm from a vehicle, and being a felon in possession of a firearm. The jury also found true the sentencing enhancement allegations. The jury could not reach a verdict on the charge of premeditated attempted murder. Accordingly,

---

2     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

>   the trial court declared a mistrial on that count, then granted the prosecution's motion to dismiss the charge in the interest of justice.
>       Thereafter, newly retained counsel appeared on behalf of [Davis] and moved for a new trial. Following an evidentiary hearing and argument, the trial court denied [Davis's] motion. The court then sentenced defendant to an aggregate term of 32 years, plus eight months to life in state prison. . . .

*People v. Davis*, No. C065945, 2012 WL 2168777, at *1-2 (Cal. Ct. App. June 14, 2012).

The trial court sentenced Davis to an aggregate term of 32 years plus 8 months to life in state prison. *Id.* at *1. Through counsel, Davis appealed, arguing that trial counsel was ineffective for allowing the jury to be informed of Davis's prior felony for possession of a firearm and the trial court erred in failing to conduct a *Marsden*[3] hearing when he moved for a new trial based on counsel's ineffective assistance. The Court of Appeal affirmed Davis's judgment of conviction in a reasoned opinion issued on June 14, 2012. *Id.* at *4. Davis filed a counseled petition for review, arguing that the Court of Appeal used the incorrect standard in determining whether Davis was prejudiced by his counsel's ineffective assistance and he should have been afforded a *Marsden* hearing. The California Supreme Court summarily denied review on August 29, 2012.

During the pendency of his appeal, Davis filed three *pro se* petitions for habeas relief with the state superior court. Davis filed his first petition on February 13, 2012, arguing that trial counsel: 1) failed to adequately interact with him; 2) failed to call experts on botany and gunshot residue; 3) made no effort to contact Omarea McPherson, who would have testified that he, and not Davis, shot the victim; and 4) allowed the jury to be informed of his prior conviction

---

[3] *See People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

for possession of a firearm. Davis attached to his petition a document purportedly drafted by McPherson, in which he claimed that he accidentally shot the victim from the passenger's side backseat. On April 20, 2012, the superior court determined that Davis failed to state any claim upon which relief could be granted because his direct appeal, in which he raised ineffective assistance of counsel claims, was pending.

Davis then filed a second *pro se* petition for habeas relief with the superior court, arguing that trial counsel was ineffective for failing to call McPherson, who would allegedly testify that Davis was innocent. The superior court denied Davis relief on August 17, 2012, concluding that this claim had already been rejected by the Court of Appeal on direct appeal and Davis had additionally raised the claim in his previous petition for habeas relief.

Davis then filed a third *pro se* petition with the superior court, in which he argued that trial counsel: 1) failed to present his version of the facts, i.e., that the shooting was not intentional; 2) failed to call experts on botany and gunshot residue; and 3) made no effort to contact McPherson. The superior court denied him relief in a reasoned opinion dated October 17, 2012.

On December 10, 2012, Davis filed a *pro se* petition for habeas relief with the Court of Appeal, in which he again argued that trial counsel: 1) failed to present his version of the facts; 2) failed to call expert witnesses; and 3) failed to interview and call McPherson. The Court of Appeal summarily denied review on December 20, 2012. Davis raised the same claims in his petition to the California Supreme Court. The California Supreme Court denied the petition without comment on April 9, 2014.

Davis filed with this Court a motion for stay and abeyance on December 5, 2013, to which he attached a copy of his habeas petition to the Court of Appeal. On April 16, 2014, shortly after the California Supreme Court denied him habeas relief, Davis filed an Amended Petition with this Court.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Davis argues that trial counsel was ineffective for: 1) failing to interview and call McPherson; 2) failing to present his version of the facts; 3) failing to call expert witnesses; and 4) stipulating that he had previously been convicted for possession of a firearm. Davis also requests an evidentiary hearing.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.      Timeliness

Respondent argues that the Amended Petition is untimely because it was filed outside of AEDPA's one-year statute of limitations, 28 U.S.C. § 2244(d)(1)(a). The California Supreme Court summarily denied Davis's petition for review on August 29, 2012. Davis's case became final for AEDPA purposes when the 90-day window for seeking review in the United States Supreme Court lapsed on November 27, 2012. *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003). Respondent concedes that the one-year statute of limitations was tolled for 23 days and Davis was accordingly required to file his Petition with this Court no later than December 20, 2013. On December 5, 2013, Davis filed a motion for a stay and abeyance, to which he attached a copy of his habeas petition filed in the Court of Appeal.

Respondent argues that Davis's motion for a stay and abeyance did not toll the statute of limitations, and thus the Amended Petition was untimely, because the motion did not include Davis's federal Petition. Davis, however, is proceeding *pro se*, and his pleading must be liberally construed by this Court. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Davis attached to his motion a copy of his petition to the Court of Appeal, and he raises identical claims in the instant Petition. Under these circumstances, the Court will deem the instant Petition timely and will decide it on the merits, as discussed below.

B.      Merits

      1.      Ineffective Assistance of Trial Counsel Claims

Davis's Petition raises a number of ineffective assistance of counsel claims. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must

show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Davis must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

        a.     Failure to investigate and call Omarea McPherson (claim 1)

Davis first contends that his trial counsel was ineffective for failing to call McPherson to testify.  The superior court denied Davis relief on this claim, concluding that he had failed to supply evidence to overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

The ultimate decision not to call witnesses to testify is generally considered to be well within counsel's "full authority to manage the conduct of the [proceeding]." *Taylor v. Illinois*,

484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand . . . ."); *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."). To show ineffective assistance of counsel based on the failure to call a witness, a habeas petitioner must show: 1) a particular witness was willing to testify, *see United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988); 2) what their testimony would have been, *see United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987); and 3) that their testimony would have been sufficient to create a reasonable doubt as to guilt, *see Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990).

Davis attaches to his Petition an unsworn statement dated January 31, 2012, more than three years and five months after the incident, which was purportedly drafted by McPherson. The document states that McPherson could and would testify that, on the evening in question, he was seated next to Davis when McPherson grabbed his pistol and pointed it at the vehicle next to them in an effort to scare the passengers. According to the statement, Davis said "no" and pushed McPherson's hand, causing the gun to accidentally discharge. The statement further submits that Davis "was convicted for [McPherson's] actions" and "it was sole[l]y an accident on [McPherson's] part."

The state court's determination that Davis failed to provide sufficient evidence to establish that his counsel was ineffective neither contravened nor unreasonably applied federal law. Given that the statement is dated nearly 3½ years after the incident and is unsworn and not authenticated, verified, or otherwise acknowledged by a third party such as a notary public, the

state court reasonably found the statement of insufficient evidentiary value to demonstrate that counsel was ineffective.

Moreover, Davis has not proven that McPherson was available to testify at the time of trial and would have testified at trial consistently with his unsworn statement. *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would have testified); *see also Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (rejecting ineffective assistance claim for failure to call a witness for lack of evidence). While McPherson had been picked up by the police on the evening of question, there is no evidence in the record that he confessed to the crime at that time or any time before trial. Indeed, had counsel called McPherson to testify and McPherson given testimony inconsistent with his later written statement, counsel could not impeach him on that ground since that statement was written years later.

Furthermore, trial counsel's failure to call McPherson was a strategic decision that this Court may not second guess. In closing, the prosecutor argued that Davis and not McPherson was the culprit because Davis was identified as the shooter by the victim and Archer, who was driving the vehicle and who also happened to be Davis's girlfriend, he had a motive to shoot the victim (the victim was apparently looking at his girlfriend), Davis was seated directly behind the driver, and Davis was picked up by the police running from the scene, demonstrating consciousness of guilt. In response, defense counsel argued that there was reasonable doubt as to Davis's guilt because several witnesses were unsure as to who the perpetrator was, or they had a motivation to lie about what they saw. Defense counsel also faulted the prosecution for failing

to call McPherson, who had been listed as a witness for the prosecution. Specifically, defense counsel argued that, "for someone that we didn't hear from at all, someone who was on his witness list who he decided not to call, [the prosecutor] sure did talk about him a lot. . . . I wonder why he didn't want us to hear from [McPherson]?" Defense counsel continued:

> Every [prosecutor] argues, without exception, it's as sure as water is wet, as sure as fire is hot, every [prosecutor] argues[,] "Well, the defense can call any witness it wants to call, I don't have to call everybody. They can call whoever they like."
> True.
> But what they always seem to forget about that is that they have the obligation. They have the burden of proof. I don't. . . .
> He does (indicating). Rests squarely on his shoulder. That's why they call it a burden.
> We know [McPherson] was in the car. We know he ran; according to [the prosecutor], that makes him the shooter, too.
> Having someone in the backseat is instantaneous reasonable doubt, by law, by definition, because there was another person there and we didn't hear what he had to say. Wonder why he didn't want you to hear. Because, again, we don't want evidence standing in the way of conviction. God forbid.
> But we do know some things about McPherson. Funny enough, some things that the [prosecutor] decided not to remind you of.

Defense counsel thus deliberately chose not to call McPherson as a matter of trial strategy, using his absence to call into question the identity of the shooter. Reasonable strategic decisions such as these do not amount to ineffective assistance, and Davis cannot prevail on this claim.

      b. Failure to base defense on accidental shooting (claim 2)

Davis next argues that his trial counsel was ineffective for failing to argue and present evidence that McPherson accidentally shot the victim. Davis argues that, had McPherson been called, he would have testified that he accidentally discharged the gun from the backseat. As this claim is merely a rehash of Davis's earlier argument that trial counsel was ineffective for failing to call McPherson, the Court similarly rejects this claim for the reasons addressed above.

-11-

     c.  Failure to call expert witnesses (claim 3)

  Davis further complains that trial counsel failed to call expert witnesses to testify on his behalf.

  On direct examination, Officer McGarvey testified that, when he apprehended Davis, Davis was carrying a black hooded sweatshirt which was covered in leaves and those leaves, in his "non-expert opinion," matched the leaves from the yard where the pistol used in the shooting was found. Davis faults counsel for not calling a botanist or horticulturist to counter Officer McGarvey's opinion. However, Davis does not describe the testimony that such an expert would have given or establish that an expert witness would have been available and willing to testify at trial. Thus, he has not established that he was prejudiced by trial counsel's failure to hire a botanist or horticulturist expert. *See Strickland*, 466 U.S. at 691-92; *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."); *Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir. 1998) (finding that the petitioner did not establish prejudice from trial counsel's failure to hire a ballistic expert because petitioner did not identify an "expert witness available to testify on his behalf or the type of testimony such witness would have provided beyond that elicited at trial," or "how any expert testimony would affect the outcome of the trial").

  In any event, defense counsel deftly cross-examined Officer McGarvey about his opinion, eliciting that: 1) he did not mention the leaf comparison in his police report; 2) he did not actually pick any leaves up from where the pistol was found; 3) he was "no leaf expert"; 4) he spent only a few minutes comparing the leaves; 5) he did not know what kind of tree the leaves came from; 6) he had not done a leaf comparison in any other case; and 7) he was not a

horticulturist or botanist or had otherwise done any extensive comparison of leaves.  Indeed, it is possible that a leaf expert would have testified that the leaves were, in fact, a match for one another, which would have been detrimental to Davis's defense.  Defense counsel was able to avoid that risk by instead extensively calling Officer McGarvey's opinion into question, thereby minimizing the impact of the leaf comparison.  Defense counsel's decision to challenge the testimony through cross-examination therefore constituted reasonable trial strategy.

Davis also faults counsel for failing to call a gunshot residue expert to testify that he did not fire the pistol in question.  On cross-examination, Officer Wong testified that he believed someone had tested McPherson for gunshot residue.  At a sidebar at the close of the presentation of evidence, the prosecution argued that defense counsel should not be permitted to argue that the police failed to test anyone for gunshot residue because there was no testimony about gunshot residue, and, unlike fingerprints, the science of gunshot residue was not within a layperson's knowledge.  The trial court ruled in the prosecution's favor, concluding that counsel "can[not] expand or explain that term [gunshot residue] without it being a form of testimony by counsel."

Again, Davis's claim must fail because he has not established that a gunshot residue expert was willing to testify, what his testimony would have been, or that the expert's testimony would have been sufficient to create a reasonable doubt as to his guilt.  In any event, based on the record, defense counsel planned to argue that McPherson was tested for gunshot evidence but the prosecution failed to present the results, thereby casting further doubt on Davis's guilt without the need for expert testimony on the issue.  But once the trial court sustained the

prosecution's objections, calling an expert was, at a minimum, unnecessary because there was no relevant gunshot residue evidence in the record.

        d.      Stipulation to prior felony conviction

Davis finally argues that his trial counsel was ineffective for stipulating that the jury could be informed as to the nature of his prior felony conviction. The Court of Appeal concluded on direct appeal that, although defense counsel was deficient in this regard, Davis's defense was not prejudiced by the error:

> Even if counsel had not allowed the jury to hear [Davis] was previously convicted of possessing a firearm, there was compelling evidence to convict [Davis] of possessing the firearm that was used in the shooting here.
> Sergeant Ridenour identified [Davis] as one of the individuals he saw jump out of the Jeep and run away immediately after the shooting. When Ridenour saw [Davis] a short time later, [Davis] again ran away. [Davis'] repeated efforts to evade law enforcement are evidence of consciousness of guilt.
> In addition, immediately following the shooting, Archer told Sergeant Ridenour that [Davis] had just shot someone. At trial, Archer testified that she did not actually see [Davis] shoot the gun, but she was "pretty sure it was him. . . ."
> When law enforcement found the gun, later identified as the gun used to shoot Pedro, they found it in a pile of leaves near the spot where [Davis] jumped out of the Jeep. Those leaves were similar to leaves found on the sweatshirt [Davis] was carrying when he was taken into police custody.
> Finally, at trial, [Davis] argued it was McPherson who shot Pedro. McPherson was in the back seat with [Davis], but he was found carrying ammunition for a shotgun, not the pistol used to shoot Pedro. Accordingly, the jury had sufficient evidence to find [Davis] possessed the firearm used to shoot Pedro; [Davis] has therefore failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra,* 466 U.S. at p. 694 [80 L. Ed. 2d at p. 698].)
> [Davis'] claim that the case was "obviously a close one" given that "the jury in the first trial hung on every count," and the eyewitness identification in the second trial "was weak," does not alter this conclusion. There were a myriad of differences between these two trials, not the least of which was a different jury. The first jury's failure to reach a verdict is not compelling evidence that counsel's error here was the reason [Davis] was found guilty.

*Davis*, 2012 WL 2168777, at *2-3.

Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel and the state court has found that counsel made an error, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993),[4] standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Given the evidence against Davis, it was not unreasonable for the state court to conclude that, had the jury known of his prior conviction but not its nature, the result of the proceeding would have been different. As the Court of Appeal observed, Davis's girlfriend identified him as the shooter, he exhibited evasive behavior indicative of a consciousness of guilt, he was seated in a better position than McPherson to shoot the victim, and the leaves found on his clothing resembled those found near the pistol used in the shooting. Under these circumstances and given the deference afforded the state court's determination, this Court cannot find unreasonable the

---

[4] Where the *Brecht* standard of prejudice applies, federal courts apply Brecht "'without regard for the state court's harmlessness determination.'" *Deck v. Jenkins*, 768 F.3d 1015, 1022 (9th Cir. 2014)(quoting *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010)). The *Deck* court explained that "AEDPA deference to the [state court's] harmlessness determination is already subsumed within the *Brecht* standard." *Id.* at 1024 (citing *Fry v. Pliler*, 551 U.S. 112, 120 (2007)).

state court's conclusion that the disclosure of the nature of his prior conviction did not prejudice him.

    2.    <u>Evidentiary hearing</u>

Davis additionally requests an evidentiary hearing with respect to his claim that counsel failed to call McPherson. Davis fails, however, to specify what evidence he wishes to present on this claim. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material

facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

As discussed above, Davis has failed to assert a colorable claim for relief. Davis presented to the state courts his claim that counsel was ineffective for failing to call McPherson and attached McPherson's unsworn statement. As Davis himself acknowledges, the state courts rejected his claim of ineffective assistance of counsel without disputing the facts contained in the McPherson's statement. Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts, he also has failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Accordingly, this Court rejects Davis's request for an evidentiary hearing.

## V. CONCLUSION AND ORDER

Davis is not entitled to relief on any ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 2, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
